THE VILLAGE OF MUNDELEIN, Plaintiff-Appellee, *v.* WILLIAM HARTNETT, Defendant-Appellant.

Second District   No. 82—674

Opinion filed September 1, 1983.—Rehearing denied October 17, 1983.

Thomas M. P. Hannigan, of Mundelein, for appellant.

Charles W. Smith, of Rosing, Carlson & Magee, Ltd., of Waukegan, for appellee.

JUSTICE HOPF delivered the opinion of the court:

The question before us is whether a local ordinance violation for driving under the influence of alcohol is punishable by a jail sentence pursuant to section 11—501(c) of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(c), as amended), when the ordinance

itself provides for only the imposition of a fine.

On February 19, 1982, the defendant, William Hartnett, was arrested for the offense of driving while under the influence of alcohol pursuant to Ordinance No. 81—12—35 of the village of Mundelein, a non-home-rule municipality. The ordinance was passed on December 21, 1981, and provides, in part, that "[e]very person convicted of violating this Section shall be fined not less than TWO HUNDRED AND 00/100 ($200.00) DOLLARS and not more than FIVE HUNDRED AND 00/100 ($500.00) DOLLARS." No further penalty is set forth in the ordinance.

Defendant entered a plea of guilty to the charge. Over defendant's objection, the court advised the defendant that under section 11—501(c) of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(c)), a violation of a local ordinance prohibiting driving while under the influence of alcohol was a Class A misdemeanor punishable by up to $1,000 fine and/or one year in jail. The court also advised that the village's burden of proof was beyond a reasonable doubt. Defendant was subsequently sentenced to one year's supervised probation conditioned upon 100 hours of public service, participation in Alcoholics Anonymous, and 30 days in jail. Defendant filed a timely notice of appeal, but the appeal was dismissed by the trial court on defendant's motion. Defendant then moved to withdraw his guilty plea, alleging that the court lacked jurisdiction to incarcerate defendant, as the ordinance under which he was charged did not provide for such a penalty. We note that defendant did not challenge the constitutionality of the proceedings. Defendant's motion was denied, and defendant appeals. No constitutional issue is raised on appeal.

■ We agree with defendant that the trial court improperly sentenced him to a jail term under the ordinance. In reaching this conclusion we rely upon section 1—2—4 of the Illinois Municipal Code, which requires all ordinances to be published before the municipality may impose a fine, penalty, imprisonment or forfeiture for its violation. (Ill. Rev. Stat. 1981, ch. 24, par. 1—2—4.) It is clear in the instant case that no provision for imprisonment was ever included in the ordinance here· or published as required by section 1—2—4. Thus, a sentence of imprisonment could not be imposed by the trial court under the ordinance in question. Defendant's sentence must therefore be reversed.

■ We must also determine whether the ordinance in question violates the State's public policy on drunken driving as expressed in the amendment to section 11—501 (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501, as amended by Pub. Act 82—311, effective January 1, 1982), for its failure to provide for a possible jail sentence of up to one year

and a possible fine of up to $1,000. If the ordinance is found to violate the State statute it is invalid and defendant's conviction thereunder must be reversed. *Hester v. Kamykowski* (1958), 13 Ill. 2d 481, 484-85, 150 N.E.2d 196.

■ The amendment to section 11—501 of the Illinois Vehicle Code prohibits driving while under the influence of alcohol or drugs and provides, in part, that "[e]very person convicted of violating this Section *or a similar provision of a local ordinance*, shall be guilty of a Class A misdemeanor." (Emphasis added.) (Ill. Rev. Stat.1981, ch. 95½, par. 11—501(c), as amended by Pub. Act 82—311, effective January 1, 1982.) Prior to the amendment, section 11—501 provided for Class A misdemeanor treatment only for those "convicted of a violation of this Section ***." (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(i).) Public Act 82—311 was passed and approved on June 18, 1981, prior to the effective date of the ordinance, and the village admits it was aware of the amendment when it drafted the ordinance.[1] The court interpreted the amendment as mandating Class A misdemeanor treatment for ordinance violators, thereby giving it the authority to exercise its sentencing discretion under the Unified Code of Corrections. (See Ill. Rev. Stat. 1981, ch. 38, par. 1005—4—1(b).) Under the Code, the possible penalties for a Class A misdemeanor include a fine of up to $1,000, and/or imprisonment for any term less than one year. (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—5—3, 1005—8—3, 1005—9—1(a)(2).) However, the village interpreted section 11—501(c) as merely authorizing, but not mandating, Class A misdemeanor treatment for ordinance violators. Therefore, it chose not to incorporate into the ordinance the full range of penalties authorized. On appeal, the village points out that had it in fact provided for such penalties the ordinance would have been in derogation of sections 1—2—1 and 1—2—1.1 of the Illinois Municipal Code, which restrict the municipality's authority to punish ordinance violators. (Ill. Rev. Stat. 1981, ch. 24, pars. 1—2—1, 1—2—1.1.) Section 1—2—1 authorizes a municipality to exact a fine or penalty for the violation of an ordi-

---

[1] A second amendment to section 11—501, Public Act 82—211, was passed on the same day as Public Act 82—311. No addition of the phrase "or a similar local ordinance" was contained in Public Act 82—211. While the parties suggest that the two amendments conflict with each other, we do not see a conflict. When two or more acts relating to the same subject matter are passed by the same General Assembly, the acts are to be construed together wherever possible to give full effect to each. (Ill. Rev. Stat. 1981, ch. 1, par. 1105.) We construe these two amendments together as providing for Class A misdemeanor treatment for a violation of either the statute or a similar local ordinance.

nance and states that "[n]o fine or penalty *** shall exceed $500 ***." (Ill. Rev. Stat. 1981, ch. 24, par. 1—2—1.) We view this section as pertaining to civil sanctions and not criminal ones. Section 1—2—1.1 sets forth the guidelines under which incarceration may be imposed and states that incarceration may not exceed six months. (Ill. Rev. Stat. 1981, ch. 24, par. 1—2—1.1.) However, the second paragraph of section 1—2—1.1 exempts ordinances enacted pursuant to section 11—208 of the Illinois Vehicle Code. (Ill. Rev. Stat. 1981, ch. 95½, par. 11—208.) Municipalities derive their authority for enacting drunken driving legislation not from the Municipal Code, but from section 11—208(15) (Ill. Rev. Stat. 1981, ch. 95½, par. 11—208(15)), which states that municipalities may adopt "such other traffic regulations as are specifically authorized by this Chapter." We therefore find no irreconcilable conflict between the Municipal Code and the Illinois Vehicle Code.

The question remains as to what effect the amendment to the Illinois Vehicle Code has on the ordinance here. It is well established that a municipality derives its powers from the legislature, and may only exercise those powers which are expressly granted or those necessarily implied in or incident to express powers. (*City of East Peoria v. Board of Trustees* (1982), 105 Ill. App. 3d 712, 714, 434 N.E.2d 781.) Municipalities may exercise police power concurrently with the State, and police regulations may differ from those of the State on the same subject, if they are not inconsistent with the State statutes. (*Village of Cherry Valley v. Schuelke* (1977), 46 Ill. App. 3d 91, 94, 360 N.E.2d 158.) Municipalities cannot, however, adopt ordinances under a general grant of power which infringe upon the spirit of the State law or are repugnant to the general policy of the State. (*Huszagh v. City of Oakbrook Terrace* (1968), 41 Ill. 2d 387, 390, 243 N.E.2d 831.) The State statute is the strongest indicator of public policy, and where the legislature speaks on a subject upon which it has constitutional power to legislate, the public policy is what the statue passed indicates. (*Marvin N. Benn & Associates, Ltd. v. Nelsen Steel & Wire, Inc.* (1982), 107 Ill. App. 3d 442, 446, 437 N.E.2d 900.) Finally, where there is a conflict between a statute and an ordinance, the ordinance must give way. *Hunt v. City of Peoria* (1964), 30 Ill. 2d 230, 232, 195 N.E.2d 719.

The real inquiry in this case is whether the legislature intended to make section 11—501(c) mandatory or directory. (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(c).) In the absence of a contrary expression, when a statute employs words having a well-known legal significance, courts will assume the legislature intended the words to

have that meaning. (*Jones v. Eagle II* (1981), 99 Ill. App. 3d 64, 424 N.E.2d 1253.) The use of the word "shall" in a statute is generally regarded as mandatory; however, it does not have a fixed, indefinite meaning and can, in fact, be construed as meaning "may" depending on the legislative intent. (*Kelso-Burnett Co. v. Zeus Development Corp.* (1982), 107 Ill. App. 3d 34, 40, 437 N.E.2d 26.) Whether an enactment is directory or mandatory depends upon the legislative intention, to be ascertained from the nature and object of the act and the consequences which would result from any given construction. (*Carr v. Board of Education* (1958), 14 Ill. 2d 40, 44, 150 N.E.2d 583.) Generally, statutory regulations designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of interested parties cannot be injuriously affected, are not mandatory unless they are accompanied by negative words which import that the acts required shall not be done in any other manner or time than that designated. (*People v. Jennings* (1954), 3 Ill. 2d 125, 127, 119 N.E.2d 781.) On the other hand, where disregard of the provision would injuriously affect the public interest or a private right, the provision is to be regarded as mandatory. (*In re Pryor* (1982), 111 Ill. App. 3d 851, 854, 444 N.E.2d 763; *People v. Jennings; Village of Park Forest v. Fagan* (1976), 64 Ill. 2d 264, 268, 356 N.E.2d 59.) It has also been held, however, that if a statute is mandatory, in addition to requiring the doing of the things specified, it prescribes the result that will follow if they are not done; if directory, their terms are limited to what is required to be done. (*Walker v. Cronin* (1982), 107 Ill. App. 3d 1053, 1059, 438 N.E.2d 582.) The failure to comply with a mandatory provision of a statute will render void the proceeding to which the provision relates, but strict observance of a directory provision of a statute is not essential to the validity of the proceedings thereunder. *Hester v. Kamykowski* (1958), 13 Ill. 2d 481, 484-85, 150 N.E.2d 196.

We think the legislature's recent amendment of section 11—501 (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501) evinces an intent that ordinance convictions for driving under the influence be treated as severely as convictions under the State statute. That the legislature intended to stiffen the penalties for local ordinance violations is also evident from its further amendment of section 11—501, providing that "[t]he Secretary of State *shall* revoke the driving privileges of any person convicted under this Section *or a similar provision of a local ordinance.*" (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501, as amended by Pub. Act 82—311, effective January 1, 1982.) This view is also consistent with section 11—208.1 of the Illinois Vehicle Code, which provides that "[t]he provisions of this Chapter of this

Act, as amended, *** shall be applicable and uniformly applied and enforced throughout this State, *** and in all units of local government." (Ill. Rev. Stat. 1981, ch. 95½, par. 11—208.1.) In our view the effect of section 11—501(c) is to remove from municipalities the discretion of providing for Class A misdemeanor treatment in their local ordinances, and to mandate that the full range of penalties be incorporated into such ordinances. This would give the trial court greater leeway in fashioning an appropriate sentence for the offender, reflective of both his character and that of the offense itself. We believe that to view the amendment as other than mandatory would be to disregard the plain intent of the legislature, to deprecate the seriousness of this offense, and to deprive the public of its interest in obtaining appropriate sanctions against ordinance violators. We, therefore, find that the ordinance here is invalid for failing to comply with the mandate of section 11—501(c) (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(c), as amended by Pub. Act 82—311), and that defendant's conviction thereunder must be reversed.

In reaching this result, we are mindful of those previous cases which held that the penalty under an ordinance may be less restrictive than the State law without being in conflict with it. (See *Village of Cherry Valley v. Schuelke* (1977), 46 Ill. App. 3d 91, 94, 360 N.E.2d 158; *Village of Mount Prospect v. Malouf* (1968), 103 Ill. App. 2d 88, 92, 243 N.E.2d 434; *City of Rockford v. Floyd* (1968), 104 Ill. App. 2d 161, 170, 243 N.E.2d 837, *cert. denied* (1969), 396 U.S. 985, 24 L. Ed. 2d 450, 90 S. Ct. 480; *Village of Winnetka v. Sinnett* (1933), 272 Ill. App. 143, 148; *City of Chicago v. Union Ice Cream Manufacturing Co.* (1911), 252 Ill. 311, 315, 96 N.E. 872.) In each of these cases, however, the statute was silent as to how municipalities should punish violations of similar local ordinances. This clearly is not the situation here.

For the reasons stated, the judgment of the circuit court of Lake County is reversed.

Reversed.

UNVERZAGT and REINHARD, JJ., concur.