SECOND DIVISION
FILED: July 27, 2010

No. 1-10-0142

VILLAGE OF NORTHFIELD,               )     APPEAL FROM THE
                                     )     CIRCUIT COURT OF
     Plaintiff-Appellant,            )     COOK COUNTY
                                     )
v.                                   )     No. 0920512901
                                     )
BP AMERICA, INC.,                    )     HONORABLE
                                     )     ROGER FEIN,
     Defendant-Appellee.             )     JUDGE PRESIDING


     JUSTICE HOFFMAN delivered the opinion of the court:

     The narrow question before this court is whether a local ordinance defining an abandoned gasoline service station as a nuisance is preempted by section 11-31-1 of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/11-31-1 (West 2008)). For the reasons which follow, we conclude that it is not.

     The facts giving rise to this appeal are not in dispute. BP America, Inc., (BP) is the owner of a parcel of real estate commonly known as 1900 Willow Road in Northfield, Illinois. An abandoned gasoline service station is currently situated on BP's property.

     On March 17, 2009, the Village of Northfield (the Village) issued BP a citation alleging that the abandoned gasoline service

No. 1-10-0142

station violated section 11-81 of the Northfield Village Code (Village Code). In relevant part, section 11-81 of the Village Code provides that:

"A.    Any  gasoline  service  station determined  by  the  community  development director or his/her designate to be abandoned shall  be  deemed  a  public  nuisance  which adversely affects surrounding property values and  the  public  safety  and  welfare.   A gasoline  service  station  shall  be  considered abandoned  if  it  is  not  operated  for  at  least three hundred (300) hours in any sixty (60) day  time  period.   Whenever  the  community development  director  or  his/her  designate shall  determine  that  any  service  station  is abandoned,  he  shall  immediately  so  notify, either  in  person  or  by  certified  mail,  the owner  or  operator  of  the  premises  and  issue an  order  of  abatement  that  must  be  complied with  within  ninety  (90)  days.   A  nuisance caused  by  abandonment  may  be  abated  only  as follows:

(1)   Placing the station back in operation for a minimum of six (6) hours per day, six (6) days per week.

(2)   Razing all structures in accordance with the National Fire Protection Association sections B-4-1 and B-4-2 and all ordinances of the village.

***

(3)   Making an appropriate application for a change in use of the premises to a permitted or special use.

***

B.   Upon failure of the owner to abate the nuisance, the village may abate said nuisance pursuant to the nuisance abatement provisions of this code." Northfield Village Code § 11-81 (amended January 25, 1999).

The Village Code further provides that any person causing a nuisance shall be fined not less than $100, and not more than $750, each day that the nuisance continues.  Northfield Village

Code § 14-17 (amended September 24, 2002); Northfield Village Code appendix D, art. XIIIA (amended December 1, 2008).

When BP failed to comply with the requirements of section 11-81, the Village initiated this lawsuit in the Circuit Court of Cook County. On August 19, 2009, a hearing was held to determine whether BP violated section 11-81 of the Village Code. That same day, the circuit court found that section 11-81 was constitutional and ordered BP to pay a daily fine of $750 for 21 days, totaling $15,750.

Thereafter, BP filed a motion to reconsider, arguing that it was not required to pay a fine because the Village's ordinance was preempted by section 11-31-1 of the Municipal Code (65 ILCS 5/11-31-1 (West 2008)). On December 1, 2009, the circuit court entered a written memorandum order, finding that section 11-31-1 of the Municipal Code preempted section 11-81 of the Village Code. As a consequence, the circuit court granted BP's motion to reconsider and vacated the order it previously entered on August 19, 2009. This appeal followed.[1]

---

[1]Prior to the appeal being fully briefed, this court denied BP's motion to dismiss for lack of jurisdiction. Although BP argued in its motion that the December 1, 2009, order was not a final judgment, a judgment is final and appealable if it terminates the litigation between the parties on the merits or disposes of the

In urging reversal, the Village contends that the circuit court erred in finding preemption. The Village asserts that it had the statutory authority to define what constitutes a nuisance and that its determination in section 11-81 of the Village Code that an abandoned gasoline service station is a nuisance does not conflict with section 11-31-1 of the Municipal Code. The resolution of these issues requires us to interpret state statutes and determine whether state law preempts a local ordinance. These are questions of law subject to de novo review. See Hawthorne v. Village of Olympia Fields, 204 Ill. 2d 243, 254-55, 790 N.E.2d 832 (2003).

The Village is a non-home-rule unit. Accordingly, it may exercise only those powers enumerated in the Illinois

parties' rights with regard to either the entire controversy or a separate part thereof. R.W. Dunteman Co. v. C/G Enterprises, Inc., 181 Ill. 2d 153, 159, 692 N.E.2d 306 (1998). In its December 1, 2009, order, the circuit court determined that section 11-81 of the Village Code was preempted by section 11-31-1 of the Municipal Code, thereby effectively finding that the Village could not pursue its citation against BP. Consequently, the circuit court's December 1, 2009, order disposed of the parties' rights with regard to the entire controversy and is, therefore, final and appealable. See R.W. Dunteman Co., 181 Ill. 2d at 159.

No. 1-10-0142

Constitution or conferred upon it, either expressly or impliedly, by state statute. Hawthorne, 204 Ill. 2d at 255. In this case, the Village contends that its enactment of the ordinance in question was authorized by section 11-60-2 of the Municipal Code (65 ILCS 5/11-60-2 (West 2008)).

Section 11-60-2 of the Municipal Code provides that "the corporate authorities of each municipality may define, prevent, and abate nuisances." 65 ILCS 5/11-60-2 (West 2008). Pursuant to this broad grant of authority, non-home-rule units like the Village may implement ordinances regulating nuisances. Village of Sugar Grove v. Rich, 347 Ill. App. 3d 689, 696, 808 N.E.2d 525 (2004). Traditionally, a municipality's determination as to what constitutes a nuisance will be upheld unless it is clearly erroneous. Village of Sugar Grove, 347 Ill. App. 3d at 696.

The stated purpose of section 11-81 of the Village Code is to prevent a public nuisance "which adversely affects *** the public safety and welfare." BP does not dispute that an abandoned gasoline service station can be detrimental to the public's health, safety, or welfare. Ordinances are presumed valid, and the party challenging an ordinance, in this case BP, bears the burden of proving invalidity. Village of Bechmeyer v. Wheelan, 212 Ill. App. 3d 287, 294, 569 N.E.2d 1125 (1991). Based on the record before us, we cannot say that the Village's

No. 1-10-0142

decision to define an abandoned gasoline service station as a nuisance is clearly erroneous. As a consequence, we conclude that section 11-60-2 of the Municipal Code provided the Village with adequate statutory authority to enact section 11-81 of the Village Code. A municipality's authority to act, however, is an issue entirely separate from the question of whether this power has been preempted by the superior authority of another lawmaking body. Pesticide Public Policy Foundation v. Village of Wauconda, 117 Ill. 2d 107, 111, 510 N.E.2d 858 (1987). Accordingly, we must determine whether state law preempts section 11-81 of the Village Code.

It is well established that municipalities may not adopt ordinances which infringe upon the spirit of the state law or are repugnant to the general policy of the state. Hawthorne, 204 Ill. 2d at 258-59; City of DeKalb v. White, 227 Ill. App. 3d 328, 331, 591 N.E.2d 522 (1992); Village of Mundelein v. Hartnett, 117 Ill. App. 3d 1011, 1015, 454 N.E.2d 29 (1983). Whether a local ordinance is preempted by state authority is a question of legislative intent. State Bank of Waterloo v. City of Waterloo, 339 Ill. App. 3d 767, 771, 792 N.E.2d 329 (2003).

As it did before the circuit court, BP maintains that the Village's ordinance defining an abandoned gasoline service station as a nuisance is preempted by section 11-31-1 of the

-7-

No. 1-10-0142

Municipal Code (65 ILCS 5/11-31-1 (West 2008)). In relevant part, section 11-31-1 reads:

"The corporate authorities of each municipality may demolish, repair, or enclose or cause the demolition, repair or enclosure of dangerous and unsafe buildings or uncompleted and abandoned buildings within the territory of the municipality and may remove or cause the removal of garbage, debris, and other hazardous, noxious, or unhealthy substances or materials from those buildings.

***

The corporate authorities shall apply to the circuit court of the county in which the building is located (i) for an order authorizing action to be taken with respect to a building if the owner or owners of the building ***, after at least 15 days' written notice so to do, have failed to put the building in a safe condition or to demolish it or (ii) for an order requiring the owner or owners of record to demolish, repair, or

enclose the building or to remove garbage, debris, and other hazardous, noxious, or unhealthy substances or materials from the building."  65 ILCS 5/11-31-1(a) (West 2008).

A careful examination of section 11-31-1 reveals no specific provision limiting a municipality's ability to regulate an abandoned building to the procedures provided for in that section of the Municipal Code.  Consequently, it cannot be said that section 11-31-1 expressly preempts local ordinances which provide alternative methods for defining and abating such nuisances.  However, because the Village is a non-home-rule unit, legislative intent to preempt a local ordinance may be implied.  See Hawthorne, 204 Ill. 2d at 258-59.  We, therefore, will consider the applicability of both forms of implicit preemption, field preemption (see Pesticide Public Policy Foundation, 117 Ill. 2d at 115-16) and conflict preemption (see People ex rel. Ryan v. Village of Hanover Park, 311 Ill. App. 3d 515, 525-26, 724 N.E.2d 132 (1999)).

Field preemption occurs where the legislature enacts such a comprehensive scheme of regulations as to reasonably imply that there is no room for additional regulation by local municipalities.  Pesticide Public Policy Foundation, 117 Ill. 2d at 115-16.  Although section 11-31-1 of the Municipal Code

provides municipalities with "a quick an effective means of removing those unused and dilapidated structures that present danger and blight" (City of Chicago v. Nielsen, 38 Ill. App. 3d 941, 945, 349 N.E.2d 532 (1976)), we do not believe that the statute is so comprehensive as to demonstrate the legislature's intent to preclude additional regulation of abandoned buildings by local municipalities. As previously discussed, section 11-60-2 of the Municipal Code (65 ILCS 5/11-60-2 (West 2008)) also provides non-home-rule units like the Village with the authority to "define, prevent, and abate nuisances," including abandoned gasoline service stations. By expressly delegating to local municipalities the additional authority to define and abate nuisances, the legislature further demonstrated that it did not intend to supersede the local regulation of abandoned buildings in its entirety. See State Bank of Waterloo, 339 Ill. App. 3d at 771-72 ("where authority is expressly delegated to local governments to regulate in an area, the legislature did not intend the state's regulatory authority to preempt the field entirely"). Accordingly, we conclude that field preemption does not preclude the Village from regulating abandoned gasoline service stations pursuant to section 11-81 of the Village Code.

Finally, we consider whether section 11-81 of the Village Code is nullified by conflict preemption. Relying on the

differences in the definitions of "abandoned" contained in section 11-31-1 of the Municipal Code and section 11-81 of the Village Code, BP contends that the Village's ordinance conflicts with the state statute. Specifically, BP asserts that section 11-81 of the Village Code provides that a gasoline service station shall be considered "abandoned" if it is not in operation for at least 300 hours in any 60-day time period (Northfield Village Code § 11-81 (amended January 25, 1999)); whereas, to be considered "abandoned" under subsection 11-31-1(d) of the Municipal Code, the property must: (1) be tax delinquent or have outstanding water bills for two or more years, (2) be unoccupied by the persons legally in possession, and (3) contain a dangerous or unsafe building. 65 ILCS 5/11-31-1(d) (West 2008). In addition, BP cites to subsection 11-31-1(f) of the Municipal Code, which defines "abandoned" property as having (1) been tax delinquent for two or more years and (2) unoccupied by the persons legally in possession. 65 ILCS 5/11-31-1(f) (West 2008).

We briefly note that subsections 11-31-1(d) and 11-31-1(f) of the Municipal Code contain special procedures allowing municipalities to obtain title to certain abandoned properties (see 65 ILCS 5/11-31-1(d) (West 2008)) or allowing for the testing and removal of hazardous substances and petroleum products contained therein (see 65 ILCS 5/11-31-1(f) (West

2008)). Although these subsections include their own separate definitions for "abandoned," section 11-31-1 does not define "abandoned" when it is used in the general provisions allowing a municipality to "demolish, repair, or enclose *** uncompleted and abandoned buildings." See 65 ILCS 5/11-31-1(a) (West 2008). Because it is undefined, this statutory term must be given its plain and ordinary meaning. Price v. Philip Morris, Inc., 219 Ill. 2d 182, 243, 848 N.E.2d 1 (2005). In general, abandonment occurs when the owner, with the intention of relinquishing all rights, leaves the property free to be appropriated by any other person. Bell Leasing Brokerage, LLC v. Roger Auto Service, Inc., 372 Ill. App. 3d 461, 467, 865 N.E.2d 558 (2007). Regardless of which definition is applied, however, it is clear that the Village's ordinance and the Municipal Code define "abandoned" differently. Nevertheless, the mere fact that a state statute and a local ordinance are not identical does not mean that the two regulations are in conflict for the purposes of preemption. See City of DeKalb, 227 Ill. App. 3d at 331.

Under the federal doctrine of preemption, conflict preemption arises "where compliance with both federal and state regulations is a physical impossibility *** ' [citation], or where the 'state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'

[Citations.]"  Ray v. Atlantic Richfield Co., 435 U.S. 151, 158, 55 L. Ed. 2d 179, 188-89, 98 S. Ct. 988, 994 (1978); see also People v. Chicago Magnet Wire Corp., 126 Ill. 2d 356, 371-72, 534 N.E.2d 962 (1989).  Employing similar reasoning, Illinois courts have also found that state statutes conflict with local ordinances when it is impossible to comply with both regulations (cf. Village of Wauconda v. Hutton, 291 Ill. App. 3d 1058, 1061, 684 N.E.2d 1364 (1997) (finding that a local ordinance requiring a sailboarder to wear a personal floatation device to be inconsistent with a state statute specifically providing that personal floatation devices were not required for sailboards)), or when the local ordinance stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the state (cf. People ex rel. Ryan, 311 Ill. App. 3d at 528 (finding that local ordinances allowing for alternative traffic programs that did not trigger court adjudications disrupted the function of the judiciary and undermined the policies set forth by the legislature regarding the duties of the Secretary of State).

In this case, nothing prevents BP from complying with both section 11-81 of the Village Code and section 11-31-1 of the Municipal Code.  Despite BP's assertions to the contrary, section 11-31-1 of the Municipal Code does not grant property owners the

right to operate a gasoline service station for less than 300 hours in any 60-day time period. It merely provides municipalities with the authority to "demolish, repair, or enclose \*\*\* uncompleted and abandoned buildings." See 65 ILCS 5/11-31-1(a) (West 2008). Accordingly, compliance with the Village's ordinance does not make it impossible for BP to exercise any rights granted by state law. In addition, section 11-81 of the Village Code does not stand as an obstacle to the purposes and objectives of the legislature in enacting section 11-31-1 of the Municipal Code. Indeed, the Village's ordinance furthers 11-31-1's purpose of providing municipalities with the power to abate public nuisances which may prove detrimental to public health, safety, and welfare. City of Bloomington v. Bible Truth Crusade, 197 Ill. App. 3d 793, 796, 555 N.E.2d 117 (1990); City of Peru v. Bernardi, 81 Ill. App. 3d 227, 231, 401 N.E.2d 1 (1980). For these reasons, we conclude that conflict preemption does not bar section 11-81 of the Village Code.

In sum, we find that section 11-31-1 of the Municipal Code does not preempt, either expressly or implicitly, section 11-81 of the Village Code. Having so found, we reverse the order of the circuit court granting BP's motion to reconsider and remand the matter back to the circuit court for further proceedings.

Reversed and remanded.

No. 1-10-0142

THEIS and KARNEZIS, JJ., concur.